CENTRAL CAMBALACHE, Appellant, *v.* REGISTRAR OF PROPERTY OF ARECIBO, Respondent.

No. 1017. Submitted February 21, 1938.—Decided March 11, 1938.

A. *Cadilla Ginorio* and *Miguel Santoni* for appellant. The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

By public deed Central Cambalache constituted a voluntary mortgage for a million and a half dollars to secure the payment of three promissory notes for $500,000 each, upon a consolidated property known as Central Cambalache, containing 4,939 *cuerdas* and located within the municipalities of Arecibo, Hatillo, and Barceloneta, all included within the territory of the Registry of Property of Arecibo. The mortgage was recorded in that registry in the volumes corresponding to the respective municipalities.

The mill then pledged the three notes to The Royal Bank of Canada, San Juan, Puerto Rico Branch, the contract being executed by public deed so that the collateral security so given might be made to appear in the registry. For that purpose the document was presented, together with $61 in internal revenue stamps to cover the corresponding fees.

The registrar refused to record, his decision from which this appeal is taken, being as follows:

"Record or cautionary notice of this document is suspended for the reason that record is not proper, through failure to tender the proper internal revenue stamps, as provided in number 5 of Section 22 of Act No. 32 of 1917, a notice for 120 days being placed on the margin of the entry of presentation No. 260, daybook 198, there being cancelled a 50¢ stamp, schedule of fees number 1, fee for presentation of the document, and the remaining stamps, $60.50, being returned."

Both appellant and the registrar agree that the law governing the case is Act No. 32 of 1917 (Laws, pp. 308, 312), containing the schedule of fees of the registries of property, of which number 5, insofar as material, provides:

"Number Five—For each record of entry and corresponding marginal notes not embraced in the preceding numbers there shall be charged the fixed amounts established by the following scale:

| | Records or entries in full | Records or entries in brief |
|---|---|---|
| For each estate or right whose value is | | |
| Over $1,000,000 | $60.00 | $54.00." |

The registrar cites no authorities in support of his decision. He limits himself to contending that since the property upon which the annotation is to be made is formed by lands situated in three municipalities and therefore recorded in the volume corresponding to each municipality, it having been requested that record be made in each, the case should be considered as one of three separate records, each to be paid for separately.

Appellant cites Section 61 of the Regulations to the Mortgage Law, which provides:

"Article 61.—The following shall be recorded under a single number if the persons interested should so request, being considered a single estate, in accordance with article 8 of the law and for the purposes therein stated: .

"*First*.—Rural property known as farms, coffee plantations, sugar plantations, pastures, stock farms, etc., which form dependent or joined property, with one or more buildings and one or more tracts of land, wooded or otherwise, even though they are not contiguous to each other or to the building, provided they belong to the same parcel and to one person only, or to a number of persons *pro indiviso*, even though it be subject to charges or property rights, held by one or a number of persons, and composed of different sections or parts given in emphyteusis. For the purposes of record, the direct ownership shall be considered sole, even though there be a number of persons who collect rents or annuities from an estate in the capacity of direct owners, provided the estate is not divided among them for such purpose.

". . . . . . . . . .

"If any of the group of estates which can be recorded under a single number, in accordance with the provisions of this article, should be situated within the territory of two or more municipali-

ties, the part corresponding to each shall be recorded in its special registry, a statement being made at the end of the record to the effect that the estates mentioned therein, constitute, in conjunction with the others, the numbers, books, and folios of which will be cited, the————(estate, coffee or sugar plantation, etc.), and giving the name, if it has any, or otherwise the general name by which said group is known."

Appellant then contends that the consolidation in this case was made under the authority of this Section and that therefore, although the consolidated property is recorded in three municipalities, it is nevertheless a single property, and the right now sought to be recorded with respect to it is one, and not three rights.

In our opinion appellant's position is well taken and finds support in the case of *Solís* v. *Registrar,* 19 P.R.R. 984. In that case a property located in the municipalities of Caguas and San Lorenzo was mortgaged, and the registrar recorded it, but with the curable defect of failure to describe in the deed the part of the property located in Caguas and the part located in San Lorenzo. In reversing that decision, this Court held:

"It appears from the decision quoted that property (a) is one single property, a part of which is situated in the ward of Tomás de Castro of Caguas and another part in the ward of Hato of San Lorenzo. Therefore as one single property is involved, the mortgage created thereof affects it as a whole and Section 119 of the Mortgage Law is not applicable to the present case . . ."

There is a single property in question here and the registration or recording of a single right. Does the fact that by reason of a rule for the internal management of registries, because the property is located within three municipalities within the territory of the same registry, it has been necessary to record it in three separate volumes, require the payment of fees for the registration or recording of a right in the property as though three separate properties and three separate rights were involved? In other words, is the $61

774

tendered by the appellant sufficient for the record in all the volumes, or must appellant tender the $181 demanded by the registrar?

Logically we believe that the first question must be answered in the negative, and consequently the second in the sense that the sum tendered was sufficient for the record applied for.

The registrar states in his brief that the general practice followed in all the registries in the Island sustains his interpretation of the statute, but it is not clear whether his statement refers to the case of properties located not only in different municipalities but also in different registry districts. As a matter of fact, we do not know what the practice is. We have reached the conclusion which we deem just and proper, and shall decide the appeal in accordance therewith, but if the registrar feels that his position is so strong that he believes justice requires that our decision be otherwise, he may ask for reconsideration, reenforcing his arguments and explaining more fully and clearly the practice to which he refers.

The decision appealed from must be reversed, with directions to collect fees as though the property in question were, as it is, a single property and the right therein a single right.

Mr. Justice Córdova Dávila took no part in the decision of this case.